FILED
CHARLOTTE, N.C.

DEC 30 / II: 55

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA,
CHARLOTTE DIVISION

| | |
|---|---|
| MICHAEL SMITH, | ) |
| Plaintiff | ) Civil Action No. 3:04CV638-H |
| v. | ) |
| WAFLE HOUSE, INC. | ) |
| and | ) ORIGINAL COMPLAINT |
| HILLCREST FOODS, INC. | ) JURY DEMAND INCLUDED |
| Defendants | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT

Now Comes Plaintiff Michael Smith, by and through his undersigned counsel, and for his Complaint against Defendants Waffle House, Inc. and Hillcrest Foods, Inc. states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction), 28 U.S.C. § 1343; and 42 U.S.C. § 2000a-6.

2. This Civil Action is brought pursuant to 42 U.S.C. § 2000a (2004) *et seq.* and 42 U.S.C. § 1981 as a result of Defendants' initial refusal to serve the Plaintiff and ultimate service under hostile conditions and in violation of his right to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendants' place of public accommodation, and his right to make and enforce contracts on the same basis as White persons.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because all activities described in this Complaint occurred in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(3) and (c), because the Defendants reside in the judicial district for the purposes of those sections.

## PARTIES

4. Plaintiff Michael Smith is an African American citizen of the United States of America and a resident of the State of North Carolina.

5. Defendant Hillcrest Foods, Inc. ("Hillcrest") is a foreign corporation, organized in the state of Georgia and with its principal place of business located at 50 Satellite Blvd., Suite G, Suwanee GA 30024. Defendant Hillcrest owns and operates the Waffle House restaurant located on Mulberry Church Road in Charlotte, North Carolina ("Mulberry Church Road Waffle House"), which is the location where the events described in this complaint occurred. Defendant Hillcrest maintains a registered agent in the State of North Carolina at Stetson Dr. & Tryon Blvd. Charlotte, North Carolina 28213.

6. Defendant Waffle House, Inc. ("Waffle House") is a foreign corporation, organized in the state of Georgia and with its principal place of business located 5986 Financial Drive, Norcross, Georgia 30071. Defendant Waffle House owns and operates numerous restaurants and has numerous restaurant franchises throughout the United States, including the Mulberry Church Road Waffle House. Defendant Waffle House maintains a registered agent in the State of North Carolina 225 Hillsborough Street, Raleigh, North Carolina 27603.

7. On information and belief, Defendant Hillcrest is the agent of Defendant Waffle House by virtue of its franchise agreement, its common marketing, including signage, appearance and insignia, and other use of Waffle House trademarked property, systems and operational devices.

8. On information and belief, Defendant Waffle House maintained and exercised control over the business operations of the Mulberry Church Road Waffle House.

## FACTS

9. In the morning of January 3, 2002, Plaintiff attempted to eat at the Mulberry Church Road Waffle House in Charlotte, North Carolina.

10. Mr. Smith asked the waitress if he could make a take-out order, and she told him to sit at the far end of the bar and that she would get to him after she addressed the seated eat-in diners.

11. Mr. Smith waited and watched the waitress serve all of the White, eat-in diners who had arrived before him and many White diners who came after him.

12. When Mr. Smith again asked to be served, the waitress told him that he would wait until she finished serving the other diners and that if he did not want to wait, he could sit in another section of the restaurant.

13. Realizing that the waitress was intentionally denying him service because he was African American, Mr. Smith called the police from a payphone located outside the restaurant, and he waited outside for them to arrive.

3

14. As Mr. Smith was exiting the restaurant, two White patrons, Mr. Richard Crumbaugh and Mrs. Marcia Crumbaugh stopped Mr. Smith. They told him that they had witnessed the treatment that Mr. Smith had suffered and that they believed he had been denied service because he was African American. The Crumbaughs waited with Mr. Smith outside of the restaurant for the police to arrive and told the police that Mr. Smith had been discriminated against by the Waffle House staff. *See Crumbaugh Declarations, attached hereto as Exhibit 1.*

15. While he waited for the police to arrive, Mr. Smith noticed what he believed to be a mixed-race (White and African American) couple entering the restaurant. Because he did not want to see others discriminated against, he warned the couple that the restaurant was not serving African Americans. On information and belief, the couple was actually two Waffle House employees arriving for work. Soon thereafter, an employee, who on information and belief, was the manager of the Mulberry Church Road Waffle House, approached Mr. Smith and, without investigating the situation, demanded that Mr. Smith stop bad-mouthing the restaurant.

16. The Waffle House manager conducted no investigation into what had occurred and failed to ask Mr. Smith about the treatment he had received.

17. After the police arrived (the police informed Plaintiff that it was a civil matter about which they could do nothing), a higher level manager appeared and, without investigating the matter and without having first-hand knowledge of the events, attempted to excuse the waitress' behavior because the restaurant

4

was busy. This higher level manager did see to it that Mr. Smith was finally served, but never made any acknowledgment of the discriminatory treatment, never conducted an adequate investigation of the events, and never disciplined the waitress who refused to serve Mr. Smith.

18. On information and belief, the restaurant and its management at all times relevant hereto refused to investigate the matter as an incident of discrimination and refused to discipline the responsible employees.

19. The initial denial of service and the ultimate service under unreasonably hostile conditions were motivated and caused by the Defendants' discriminatory animus against the Plaintiff because he is an African American.

20. Defendants' actions as described herein are a part of a pattern and practice of discrimination against African American customers in the provision of food and services.

## COUNT I: VIOLATION OF 42 U.S.C. § 1981

21. Plaintiff realleges and reavers each of the allegations made in the foregoing paragraphs as if they were specifically restated here.

22. At all times material to this action, Plaintiff, while seeking food and services from Defendants, presented himself in a fit, polite and proper manner, both in terms of dress and conduct.

23. At all times material to this action, Plaintiff made himself available to receive and pay for services ordinarily provided by Defendants to all members of the public in the manner in which those services are ordinarily provided.

5

24. Defendants refused to serve, or otherwise denied, Plaintiff food and services because of his race. *See Crumbaugh Declarations, Exhibit 1*

25. Additionally, because of the Plaintiff's race, Defendants' ultimate service of Plaintiff was provided in a markedly hostile manner, which a reasonable person would find to be objectively unreasonable. *See Crumbaugh Declarations, Exhibit 1.*

26. At all times material to this action, the employees and managers of the Mulberry Church Road Waffle House were acting within the scope of their employment and were acting in their capacities as employees, agents and/or representatives of the Defendants.

27. The discriminatory practices described in this complaint were carried out: a) at the direction of and with the Defendants' consent, encouragement, knowledge, and ratification; b) under the Defendants' authority, control and supervision; and/or c) within the scope of the employee's employment by Defendants.

28. Defendants' actions were undertaken intentionally and purposefully, with racially discriminatory animus, for the purpose of denying Plaintiff equal treatment on the basis of his race. Defendants acted maliciously, in bad faith, and with willful, callous, wanton and reckless disregard for Plaintiff's federally protected rights.

29. Defendant treated similarly situated White diners differently than it treated the Plaintiff. *See Crumbaugh Declarations, Exhibit 1.*

6

30. The Defendants' actions as described herein had the effect of denying Plaintiff of his right to make and enforce contracts on the same basis as White persons, and deprived Plaintiff of the enjoyment of the benefits, privileges, terms and conditions of a contractual relationship, in violation of 42 U.S.C. § 1981.

31. But for the Defendant's discriminatory conduct, the Plaintiff could, and would, visit a Waffle House restaurant in the future, including the Mulberry Church Road restaurant.

32. Defendants' actions as described herein are a part of a pattern and practice of discrimination against African American customers in the provision of food and services. This pattern and practice of discrimination is exemplified by the allegations made against the same Defendants based on similar discriminatory treatment of patrons of the same Mulberry Church Road Waffle House in Civil Action No. 3:04CV014 (*Harris v. Waffle House*), filed in this same Court.

33. Defendants knowingly authorize, assist, encourage, ratify and condone the discriminatory conduct described in this Complaint by, among other things, managerial authorization of, and participation in, discrimination, and their managements' otherwise failure to adequately investigate or address the numerous instances of discriminatory conduct perpetrated by the Defendants' employees against African American patrons.

34. As a proximate result of the Defendants' actions as described in this Complaint, Plaintiff has suffered, continues to suffer and will continue to

7

suffer great and irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress and mental anguish.

## COUNT II: VIOLATION OF 42 U.S.C. § 2000

35. Plaintiff realleges and reavers each of the allegations made in the foregoing paragraphs as if they were specifically restated here.

36. The Mulberry Church Road Waffle House is a place of public accommodation under the meaning of 42 U.S.C. § 2000a.

37. The operation of the Mulberry Church Road Waffle House affects interstate commerce within the meaning of 42 U.S.C. § 2000a.

38. Plaintiff has met all administrative requirements, if any, prior to the filing of this civil action.

39. By the actions described in this Complaint, the Defendants have denied the Plaintiff, because of his race, the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation in violation of 42 U.S.C. § 2000a. *See Crumbaugh Declarations, Exhibit 1.*

40. By the actions described in this Complaint, the Defendants have additionally denied the Plaintiff, because of his race, the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation in violation of 42 U.S.C. § 2000a. *See Crumbaugh Declarations, Exhibit 1.*

41. Said denial of equal enjoyment of the goods services, facilities, privileges, advantages and accommodations of a place of public accommodation in

8

violation of 42 U.S.C. § 2000a is a part of a pattern and practice of discrimination as described more fully above in this Complaint.

42. But for the Defendant's discriminatory conduct, the Plaintiff could, and would, visit a Waffle House restaurant in the future, including the Mulberry Church Road restaurant.

43. As a proximate result of the actions of Defendants as described in this Complaint, Plaintiff has suffered, continues to suffer and will continue to suffer great and irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant him relief as follows:

a. A declaratory judgment finding that the Defendants' actions violated 42 U.S.C. § 1981 and 42 U.S.C. § 2000a;

b. A permanent injunction barring defendants from continuing to engage in illegally discriminatory conduct against Plaintiff and other African-Americans who might visit a Waffle House restaurant in the future;

c. A permanent injunction directing Defendants to take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

d. An award of compensatory damages in amount that would fully compensate and make Plaintiff whole for his damages, including but not limited to humiliation, embarrassment, emotional distress, and mental

9

anguish, caused by Defendants' violations of law as described in this Complaint;

e. An award of punitive damages to Plaintiff in an amount that would punish Defendants for the intentional, malicious, callous, bad faith, willful, wanton and reckless conduct alleged in this Complaint, and that would effectively deter Defendants from future discriminatory conduct;

f. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and/or 42 U.S.C. § 2000a-3(b), and other applicable law; and

g. Any other relief the Court deems to be just, equitable and/or necessary.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all counts described herein.

Dated: December 30, 2004

For:
PLAINTIFF MICHAEL SMITH

BY: *[signature]*
Henderson Hill (N.C. Bar No. 18563)
S. Luke Largess (N.C. Bar No. 17486)
FERGUSON, STEIN, CHAMBERS, ADKINS,
GRESHAM & SUMTER, P.A.
741 Kenilworth Ave. Suite 300
Charlotte, North Carolina 28204-5654
Phone: 704-375-8461
Facsimile: 704-334-5654

Leslie D. Alderman III (D.C. Bar 477750)
T. Cary Devorsetz (D.C. Bar No. 475070)
ALDERMAN & DEVORSETZ, PLLC
1025 Connecticut Ave., NW
Suite 1000
Washington, D.C. 20036
Phone: 202-969-8220
Facsimile: 202-969-8224

Susan E. Huhta
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
Phone: 202-319-1000
Fax: 202-319-1010

Counsel for the Plaintiff

## Declaration of Richard Daniel Crumbaugh

1. My name is Richard Daniel Crumbaugh. I am Caucasian, over the age of 18, and am legally competent to make this declaration. The facts set forth below are from my own personal knowledge.

2. On the morning of January 3, 2002, my wife and I were traveling from Alabama to Virginia and stopped to eat breakfast at the Mulberry Church Road Waffle House in Charlotte, North Carolina.

3. I overheard a waitress rudely telling a man we later learned was Michael Smith that he would have to wait to be served.

4. We watched as the waitress served not only dine-in customers who had arrived before Mr. Smith but also white dine-in customers who arrived after him, all the while totally ignoring Mr. Smith.

5. The waitress was not serving any other African Americans, and I do not recall seeing any other African-American customers in the restaurant.

6. It was apparent to me from the waitress's attitude and behaviors that she was not too busy to take Mr. Smith's order; rather, she was intentionally ignoring him.

7. During our meal, my wife and I repeatedly discussed the waitress' refusal to serve Mr. Smith. I was angry and dismayed at the race discrimination I was witnessing and expressed my feelings to my wife. I could not believe this was happening today in this country.

8. At all times, Mr. Smith behaved himself in an entirely appropriate manner.

9. As Mr. Smith was leaving, he walked by our booth and I told him that I saw how the waitress had treated him, that it was wrong, and that he should do something about it. The waitress appeared to hear us and said something to the effect of, "I didn't do anything wrong. I was busy."

10. When we left the restaurant, we saw Mr. Smith waiting for the police and we waited with him. I reiterated to him that how he had been treated was absolutely wrong and that it was obvious he had been treated differently than the other customers. We also gave him our card in case he needed assistance. When the police arrived, I told them that I had witnessed blatant discrimination and that we don't run around looking for causes, but when you see something like that you have to stand up and do something about it.

11. The police said they could not do anything about it because it was a civil matter, not a criminal matter. The police added that they would not go to that Waffle House anyway because the staff spit in their food.

12. At some point while the police were there, an employee from the restaurant, who I believe identified himself as the manager, came outside and, after standing and listening to us talk to the police, said something in defense of the waitress. He made no effort to ask us further questions about what we had seen or heard, or to remedy the problem.

13. No one from Waffle House ever contacted me to follow up on the incident.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, recollection, and belief.

_____      19 October 2004
Richard Daniel Crumbaugh                     Date

## Declaration of Marcia Crumbaugh

1. My name is Marcia Crumbaugh. I am Caucasian, over the age of 18, and am legally competent to make this declaration. The facts set forth below are from my own personal knowledge.

2. On the morning of January 3, 2002, my husband and I were traveling from Alabama to Virginia and stopped to eat breakfast at the Mulberry Church Road Waffle House in Charlotte, North Carolina.

3. I overheard a waitress rudely telling a man we later learned was Michael Smith that he would have to wait to be served.

4. We watched as the waitress served not only dine-in customers who had arrived before Mr. Smith but also white dine-in customers who arrived after him, all the while totally ignoring Mr. Smith.

5. It was apparent to me from the waitress's attitude and behaviors that she was not too busy to take Mr. Smith's order; rather, she was intentionally ignoring him. In fact, she was notably friendly to her white customers, including myself. She was clearly aware of Mr. Smith's presence but pointedly ignored him, almost as though she was making a show of how she was treating him.

6. During our meal, my husband and I repeatedly discussed the waitress' refusal to serve Mr. Smith. I was absolutely outraged at the race discrimination I was witnessing and expressed my outrage to my husband. I kept saying, "Honey, that's not right."

7. When Mr. Smith tried to get the waitress's attention, she responded in a self-righteous and cold manner something about how she was going to take care of the seated customers first and that if he wanted to get served he would have to get in another line.

8. Mr. Smith appeared to be upset, frustrated and embarrassed but continued to behave himself in an entirely appropriate manner.

9. Because of the outrage and disgust I felt at what I was witnessing, I was unable to finish my breakfast.

10. As Mr. Smith was leaving, we stopped him as he passed by our booth and one or both of us told him we saw what had happened and that it wasn't right. I felt embarrassed for him. The waitress appeared to hear us and looked at me.

11. When we left the restaurant, we saw Mr. Smith waiting for the police and we waited with him. I reiterated to him that we had witnessed what happened and

that, if he pursued it, he should feel free to contact us and that we would be willing to make a statement on his behalf. We then gave him our card.

12. When the police arrived, I told them that I had witnessed blatant discrimination but they said it was a civil matter, not a criminal matter. The police added that they would not go to that Waffle House anyway because the staff spit in their food.

13. At some point while the police were there, an employee from the restaurant, who I believe was the manager, came outside and, after standing and listening to us talk to the police, said something in defense of the waitress. He made no effort to ask us further questions about what we had seen or heard, or to remedy the problem.

14. No one from Waffle House ever contacted us to follow up on the incident.

15. I am a fifth-generation southerner and was extremely offended. I have never witnessed such blatant discrimination before in my life.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, recollection, and belief.

_Marcia Crumbaugh_      _October 19, 2004_
Marcia Crumbaugh      Date